In re Guardianship of Devereaux : Devereaux and another, Appellants, vs. Hahn, Guardian, Respondent.

*January 7—April 15, 1941.*

For the appellants the cause was submitted on the brief of *Richard R. Rynders* of Madison.

*H. E. Kjorstad* of Reedsburg, for the respondent.

The following opinion was filed February 4, 1941:

WICKHEM, J. It is first contended that the county court was without jurisdiction to appoint Hahn as guardian because no notice of any hearing with respect to his appointment was ever served upon the incompetent or her family. It is claimed that at common law a successor guardian could not be appointed without notice and that the statutes have not changed the rule. It is our conclusion that the statutes completely cover the procedure for the appointment and removal of guardians, and that in the case of appointment of a successor guardian no notice is prescribed. Sec. 319.16, Stats., provides that a relative or friend of an insane or incompetent person, by verified petition to the county court of the county in which the person resides, may apply for the appointment

of a guardian. This section provides for a ten-day notice of hearing to be given to the incompetent person. Sec. 319.17 provides for the appointment of a guardian if after hearing and examination upon such petition it shall appear that the person in question is actually incompetent. Sec. 319.08 provides in substance that when any guardian becomes incapable of discharging his trust or unsuitable therefor, the court, after notice to such guardian and all others interested, may remove him. The section proceeds, "and every guardian may be allowed to resign his trust when it shall appear to the court proper and upon every such resignation or removal and upon the death of any guardian the court may appoint another in his place and thereupon the court shall cite the new guardian and his predecessor or the latter's personal representative to appear at a stated time and place to settle the former guardian's account. . . ." Sec. 324.35 provides, "If an executor, administrator, guardian or trustee shall reside out of this state, or shall neglect to render his account within the time provided by law or the order of the court, . . ." the county court may remove such guardian and appoint a successor therefor "but no such order shall be made until the person affected has been notified, . . . to show cause at a specified time why he should not be removed." Sec. 319.34 provides that a county court in its discretion, whenever the same shall appear necessary, may appoint more than one guardian of any person subject to guardianship. Here again there is no specific requirement of any notice.

It appears to us to be more than a coincidence that the above sections definitely prescribe hearings, (1) where a person is alleged to be incompetent and (2) when a guardian is sought to be removed, and that the statute makes no requirement for a hearing, (1) where the guardian resigns or dies, and (2) when his successor is to be appointed. The statute has so specifically required notices in the first two instances as to leave little doubt that notice is not required in the latter two in-

stances. The reason seems obvious. When a person is charged with being an incompetent he should have notice and a hearing on that issue. When a guardian is claimed to be unsuitable or recreant to his trust, he should have notice and a hearing on the issue of his qualifications to continue as guardian. The appointment of a guardian, or successor guardian, however, once the issues of incompetency or removal have been disposed of, is a matter within the discretion of the court and presents no issue calling for notice and hearing as the basis of jurisdiction. Hence, the omission of the requirement was deliberate and leaves no room for importing common-law requirements of notice, if there are such, a point which we do not decide.

It is next contended that the guardian did not diligently perform his duties. This conclusion is largely grounded upon the fact that the business block which formed the largest single piece of property in the estate had previously been rented to Schweke Brothers at $150 a month; that from April, 1935, until April, 1937, the rent was reduced by the present guardian to $100 a month; and that for the period following April 1, 1937, the rent was only increased to $125 a month. The basis for this contention is that Schweke Brothers are shown to have made a profit by reletting the premises during this period. There is evidence, however, to the effect that in 1932, 1933, and 1934 the tenants lost money on the building at a rental of $150 per month, and that while during 1935, 1936, and 1937 they made a profit, they sustained a loss over the whole period. Meantime, the tenants have handled the whole building, assumed the responsibility for subletting, and taken care of repairs. The trial court correctly considered that the mere fact that the premises were presently sublet at a net profit was not a sufficient reason for concluding that the present guardian was incompetent or improvident in his contract of rental. The risk assumed by the lessees with respect to rerenting, and the fact that over the whole period the lessees

have sustained losses as well as gains, justify this conclusion. The sharp reduction of rent in 1935 was caused by the depression, and it is by no means clear that that was not a wise and provident act on the part of the guardian. The increase in the rental in 1937, as soon as the conditions appeared to have improved, does not support a conclusion of incompetence on the part of the guardian.

There is some argument to the effect that the court abused its discretion in not appointing as guardian Bliss Devereaux, the twenty-one-year-old son of incompetent. The testimony concerning this boy was that he was honest but completely without business experience. He had graduated from high school, spent some time in a CCC camp, and worked for a few days at common labor. Outside of a commercial course in high school he had no knowledge of business affairs. It was not an abuse of discretion to continue as guardian an adult, experienced person in preference to him. It is our conclusion that the matter was properly disposed of in the lower court.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on April 15, 1941.